FILED
COURT OF APPEALS
DIVISION II

2014 FEB 11 AM 8:38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUSAN K. BROWN, | No. 43708-2-II |
| Appellant, | |
| LANCE B. BROWN, | |
| Plaintiff, | |
| v. | |
| CITY OF TACOMA, a municipal subdivision of the State of Washington; and JACQUELINE STRONG MOSS, individually and in her capacity as Manager of the City of Tacoma Human Rights and Human Services Department, | UNPUBLISHED OPINION |
| Respondents, | |
| JOHN L. BRIEHL, individually and in his capacity as Executive Director of the City of Tacoma Human Rights and Human Services Department, | |
| Defendants. | |

HUNT, J. — Susan K. Brown appeals the superior court's summary judgment dismissal of her employment retaliation claim against the City of Tacoma. She argues that she established a prima facie case of retaliation and demonstrated that the City's reason for terminating her employment (that she violated the ethics code) was a pretext for terminating her for having made

a hostile work environment complaint against a department manager. The City responds that Brown did not establish a prima facie retaliation case or pretext because her sole evidence was inadmissible hearsay. Holding that the superior court properly granted summary judgment because Brown did not meet her burden to establish pretext, we affirm.

FACTS

I. BACKGROUND

A. Hostile Work Environment Complaint

In 2003, the City of Tacoma hired Susan K. Brown as an administrative assistant under the supervision of Human Rights and Human Services Department Director John L. Briehl. Briehl commended Brown's work performance on many occasions and recommended her for a committee assignment as extra work. He described Brown as a hardworking multi-tasker and later reported that he was "very pleased" with Brown's work performance and received no complaints about "inappropriate delegation or imbalanced work." Clerk's Papers (CP) at 87.

In 2008, the City hired Jacqueline Strong Moss as Human Rights and Human Services Department Manager. Brown and fellow City employee Frank Gavaldon made a hostile work environment complaint about Strong Moss's behavior to the City's Human Resources Department. An outside investigator determined that the conflict between Strong Moss and the two employees resulted from personality differences rather than from Strong Moss's creating a hostile work environment. The investigator found no evidence to substantiate Brown and

Gavaldon's hostile work complaint or that Strong Moss had discriminated against them on the basis of a protected status.[1]

### B. Ethics Investigation; Termination

In March 2010, in response to a tip, the City began investigating Brown and Briehl for Code of Ethics[2] violations relating to Brown's use of City equipment to run her personal travel business during work hours.[3] The City hired a digital forensic consultant, who found that (1) Brown's non-work related internet use "appear[ed] to be high"[4] and was not isolated to a particular time of day, such as lunch breaks; and (2) Briehl's non-work related computer use was not similarly "unusual." CP at 75.

Sometime in April, Briehl informed Brown that he had met with City Manager Eric Anderson and discussed the Brown, Gavaldon, and Strong Moss "situation." CP at 262. Briehl told Brown that Anderson had told him that "someone"[5] would be fired "because 'this is going to end.'" CP at 136. When Brown asked Briehl if she would be the person fired, Briehl responded that it appeared unlikely.[6]

---

[1] In February 2010, Brown, Gavaldon, and Strong Moss engaged in mediation to address the conflict. The record does not include the mediation results.

[2] CITY OF TACOMA CODE OF ETHICS Title 1.46 (Aug. 4, 2008).

[3] Gavaldon was not a subject of this investigation.

[4] CP at 76.

[5] Brown interpreted "someone" to mean her, Strong Moss, or Gavaldon.

[6] More specifically, Briehl said that he "'doubt[ed] it, but you never know,'" CP at 136; or "'I don't think so.'" CP at 262.

The City hired an outside ethics investigator, who, on May 5, concluded that Brown had violated the City's Code of Ethics in a number of different ways by "knowingly" using her position and City resources to secure privileges for her personal benefit. CP at 87. Specifically, the investigator concluded that Brown (1) engaged in a pattern of leaving work early before weekends and vacations, claiming sickness before and after weekends, and not reporting frequent extended absences from the office during working hours; (2) used her personal laptop during work hours to pursue her private travel business; (3) asked a subordinate City employee to assist with her personal laptop during work hours; (4) assigned work to other City employees because she was unable to complete her work as a result of spending substantial time on personal activities at work; (5) used City-owned equipment for her personal profit; and (6) engaged in frequent texting and calls on her personal cell phone during work hours.

The ethics investigator recommended retraining and discipline against both Briehl and Brown. On May 12, the Deputy City Manager terminated Brown's employment for "failure to meet performance expectations and standards associated with [her] position and in part upon the factual findings of a recent investigation."[7] CP at 92.

## II. PROCEDURE

Brown sued the City for wrongful discharge and retaliation; she sued Strong Moss for intentional infliction of emotional distress.[8] The superior court granted the City's and Strong

---

[7] The record does not show that the City disciplined Briehl.

[8] Brown also claimed the City had intentionally and negligently inflicted emotional distress on her and defamed her; but the parties dismissed those claims by stipulation. Brown also named Briehl in her lawsuit but later removed him as a party.

4

Moss's motions for summary judgment. The superior court ruled that (1) Brown's proffered evidence of pretext to support her retaliation claim—Briehl's telling her that Anderson had said "someone's going to get fired"—was inadmissible hearsay; and (2) thus, Brown lacked competent evidence of a material issue of fact. Verbatim Transcript of Proceedings (June 15, 2012) at 21. Brown appeals the superior court's summary judgment dismissal of her retaliation claim against the City.[9]

## ANALYSIS

Brown argues that the superior court erred in dismissing her retaliation claim against the City because she (1) established a prima facie case of retaliation and (2) demonstrated that the City's reason for terminating her employment was a pretext for terminating her for having made a made a hostile work environment complaint. Assuming, without deciding, that Brown established a prima facie case of retaliation, we turn our attention to her pretext claim, hold that she did not establish a material issue of fact about the reason for her termination, and affirm the superior court's dismissal of her retaliation claim on this ground.

### I. STANDARD AND SCOPE OF REVIEW

#### A. Summary Judgment

We review a superior court's summary judgment order de novo, engaging in the same inquiry as the lower court. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005). Summary judgment is appropriate only if the "pleadings, depositions,

---

[9] Although Brown also appealed the superior court's denial of her motion for reconsideration, she assigns error to and argues against only the superior court's dismissal of her retaliation claim against the City.

answers to interrogatories . . . together with the affidavits . . . show that there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one on which the outcome of the litigation depends. *Schmitt v. Langenour*, 162 Wn. App. 397, 404, 256 P.3d 1235 (2011). When determining whether a trial is necessary, we view facts in the light most favorable to the nonmoving party, here, Brown. *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004). If reasonable minds could reach different conclusions about a fact, a genuine issue of material fact exists and the case cannot be resolved as a matter of law. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 601, 200 P.3d 695 (2009). Such is not the case here.

To defeat an employer's motion for summary judgment, the employee must do more than make "conclusory statements." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). Rather, the employee "must establish specific and material facts to support each element of his or her prima facie case." *Marquis*, 130 Wn.2d at 105. Here, Brown fails to establish facts to support pretext for her employment retaliation claims.

## B. Employment Retaliation Burden-Shifting Scheme

RCW 49.60.210(1)[10] protects employees from retaliation for opposing an employer's action forbidden by the Washington Law Against Discrimination, ch. 49.60 RCW.[11] To evaluate

---

[10] The legislature amended RCW 49.60.210 in 2011. LAWS OF 2011, ch. 42 § 25. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[11] RCW 49.60.210(1) provides:
> It is unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices

employment retaliation cases, our courts have adopted the same three-part burden-shifting scheme used in discrimination claims. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 68-69, 821 P.2d 18 (1991); *see also Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180-82, 23 P.3d 440 (2001), *abrogated on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 222, 137 P.3d 844 (2006) (applying burden shifting in the discrimination context). The burden first rests on the employee to establish a prima facie case of retaliation. *Wilmot*, 144 Wn.2d at 68-69; *Hill*, 144 Wn.2d at 181. If the employee successfully establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory explanation for its adverse employment decision. *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418 (2002). If the employer establishes such legitimate explanation, the burden shifts back to the employee to produce admissible evidence sufficient to create a triable issue of fact about whether the employer's stated reason for its adverse employment action was pretext. *Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633, *review denied*, 158 Wn.2d 1015 (2006).

When applying this three-part burden-shifting scheme, we, like the trial court, neither weigh evidence nor assess witness credibility. *Barker*, 131 Wn. App. at 624. Here, we assume for summary judgment purposes that Brown established a prima facie retaliation case. Thus, the City was entitled to summary judgment only if it established a legitimate non-retaliatory reason for terminating Brown and she failed to demonstrate pretext when the burden shifted back to her. *See Hill*, 144 Wn.2d at 182.

---

forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

## II. ETHICS CODE VIOLATION--LEGITIMATE NON-RETALIATORY REASON FOR TERMINATION

The City asserts that it fired Brown after the independent ethics investigator concluded that she had violated the City's ethics code in several ways. In support of its motion for summary judgment, the City submitted an affidavit from its human resources director, the digital forensic consultant's report, and the ethics investigator's findings and conclusions, all of which detail Brown's misuse of City resources. Brown neither contests the truth of these findings nor challenges the investigator's conclusions.

Instead, Brown contends that she did not commit ethics violations because Briehl "authorized personal computer work so long as the employee's City work was completed." Br. of Appellant at 10. Although attempting to offer an excuse for her personal use of City resources, Brown does not challenge the accuracy of the investigator's factual findings or conclusions that these actions violated the City's Code of Ethics. Construing the facts and inferences in the light most favorable to Brown, we conclude that (1) the City met its burden of producing evidence of a legitimate non-retaliatory reason for terminating Brown's employment; and (2) that when the burden shifts back to Brown to prove this reason was pretext, she fails to carry this burden.

### A. No Genuine Issue of Material Fact about Pretext

To defeat the City's summary judgment motion in this third phase of the *Hill* burden-shifting scheme, Brown had to produce sufficient evidence of pretextual termination to create a triable issue of fact. *See Barker*, 131 Wn. App. at 624. To show pretext, Brown had to provide some evidence that the City's reason for terminating her is "unworthy of belief." *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738, 904 P.2d 793 (1995), *review denied*, 129 Wn.2d 1011

(1996). At the summary judgment stage, Brown needed to show only that a reasonable trier of fact could, but not necessarily would, draw the inference that retaliation was a substantial factor[12] in the adverse employment decision.[13] *See Sellsted v. Wash. Mut. Sav. Bank*, 69 Wn. App. 852, 860, 851 P.2d 716 (1993), *overruled on other grounds by Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P.2d 284 (1995).

To defeat summary judgment, however, the employee's evidence of pretext must be admissible at trial. *Barker* 131 Wn. App. at 624. Here, Brown's only evidence of pretext[14] was her deposition testimony and an interrogatory answer detailing a conversation she had with Briehl after he and the City Manager discussed "the situation with [Gavaldon, Strong Moss and Brown]"[15] approximately three weeks before Brown was terminated: Brown testified that,

---

[12] "[A] plaintiff bringing suit under [former] RCW 49.60.210 [(1985)] must prove causation by showing that retaliation was a substantial factor motivating the adverse employment decision." *Allison v. Hous. Auth. of City of Seattle*, 118 Wn.2d 79, 96, 821 P.2d 34 (1991).

[13] Competent employee evidence rebutting the accuracy or believability of the employer's asserted legitimate reason for its adverse employment action is sufficient to create competing inferences of retaliation and non-retaliation to defeat summary judgment and to send this factual retaliation issue to trial. *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn. App. 611, 624, 60 P.3d 106 (2002).

[14] Without citation to the record, Brown argues that the fact that Briehl was not also terminated from employment (even though the ethics investigator recommended discipline against him) is evidence of pretext for her termination. The investigator, however, concluded that Briehl knew about Brown's violations and implicitly sanctioned her actions; but the record does not establish that Briehl used City resources for his own benefit as did Brown. Thus, the bases for the City's allegedly disparate treatment of these two persons differed. Furthermore, the record's silence about whether Briehl was disciplined is not evidence that he was *not* disciplined.

[15] CP at 262.

during this conversation, Briehl had repeated the City Manager's statement that "someone"[16] (which she believed meant herself, Gavaldon, or Strong Moss) would be fired "because 'this is going to end.'" CP at 136. Brown argues that this conversation was admissible to demonstrate pretext under the agency exception to the hearsay rule and, therefore, the superior court improperly granted summary judgment to the City. We disagree.

Even assuming, without deciding, that the conversation between Briehl and Brown was not (as the superior court ruled) inadmissible hearsay, we hold that this conversation evidence did not create an issue of fact about pretext to defeat summary judgment for the City. The City produced voluminous documented evidence from its outside ethics investigation detailing Brown's numerous and ongoing violations of the City's Code of Ethics, especially her pattern of misusing City resources for personal gain. In contrast, Brown's conversation with Briehl in which he relayed comments by the City Manager is speculative, even taken in the light most favorable to Brown. These alleged vague statements[17] did not specifically point to Brown as the target of retaliatory employment action; at best, they said only that "someone"[18] would be fired and even included among the possibilities Strong Moss, the person who had allegedly caused the hostile work environment.

Considering Brown's deficient evidence of pretext against the backdrop of the City's uncontroverted evidence of her actions that constituted ethics violations, we hold that no

---

[16] CP at 136.

[17] Brown offered no direct evidence of these statements by way of declarations from either Briehl or the City Manager.

[18] CP at 136.

reasonable trier of fact would infer that retaliation was a substantial factor in the City's decision to end Brown's employment. *See Sellsted,* 69 Wn. App. at 860. Thus, we further hold that Brown did not satisfy her burden to demonstrate that the City's non-retaliatory reason for terminating her employment was merely pretext. For the foregoing reasons, we affirm the superior court's summary judgment dismissal of Brown's retaliation claim against the City.[19]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Penoyar, J.

---

[19] We may affirm the superior court on any ground that the law and facts support. *Wallace v. Lewis County,* 134 Wn. App. 1, 12, 137 P.3d 101 (2006).